# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

J. ROE,

$\qquad$ Plaintiff,

$\qquad$ v.

RPI,

$\qquad$ Defendant.

1:22-CV-932
(TJM/ATB)

J. ROE, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## DECISION AND ORDER

The Clerk has sent to the court for review a pro se action filed by the plaintiff under the pseudonym J. Roe.  On August 17, 2022, plaintiff filed a complaint, along with an application to proceed in forma pauperis ("IFP"), in the Northern District of California.  (Dkt. Nos. 1 (Complaint ("Compl.")); 3).  On August 25, 2022, Magistrate Judge Donna M. Ryu issued an order to show cause ("OSC") why the plaintiff's action should not be transferred from the Northern District of California to the Northern District of New York.  (Dkt. No. 7).  Subsequent to a review of  plaintiff's response to the OSC (Dkt. No. 10), Magistrate Judge Ryu ordered that the action be transferred to the Northern District of New York on September 8, 2022.  (Dkt. No. 11).  On October 3, 2022, plaintiff filed an amended complaint with this court.  (Dkt. No. 14) (Amended Complaint ("AC")).

Presently before this court are plaintiff's application to proceed IFP (Dkt. No. 3), motion to seal (Dkt. No. 6), and motion to obtain an ECF login and password (Dkt. No. 13).  As an initial matter, plaintiff's IFP application does not sufficiently apprise this

court of whether plaintiff is entitled to proceed without the prepayment of fees, warranting dismissal in itself.  Nevertheless, in light of additional deficiencies noted in the amended complaint, prior to making a recommendation to the district judge this court will provide plaintiff with an opportunity to (1) resubmit an IFP application or pay the filing fee, and (2) amend the action to address the deficiencies noted herein.

I.  **IFP Application**

The statute governing IFP proceedings provides that the court may authorize an individual to bring an action without prepayment of fees, when he or she submits an affidavit showing an inability to pay such fees. 28 U.S.C. § 1915(a)(1).  The purpose of the IFP application is so that the court may determine whether a litigant meets the standard for proceeding without payment of fees.  The statute further provides that the court shall dismiss an IFP action at any time if it determines that the "allegation of poverty is untrue." *Cuoco v. United States Bureau of Prisons*, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004) (citing 28 U.S.C. § 1915(e)(2)(A).  Deliberately concealing or understating a litigant's finances in order to gain access to the court without the payment of fees qualifies as a false allegation of poverty. *Id.* at 467-68 (citations omitted).

In support of the instant IFP application, plaintiff has filed a document entitled "Ex Parte Motion to Proceed," which plaintiff purports to have been "adopted from a related forma pauperis application" from the Northern District of California.  (Dkt. No. 3 at 1).  Plaintiff's IFP application is deficient for several reasons.  For example, although apparently not presently employed, plaintiff has declined to disclose a date of

last employment and/or gross wages received. (*Id.* at 2). Plaintiff is, purportedly, "involuntarily forced to protect substantial private, confidential, and undisclosed material facts," pursuant to the "Fifth and Fourteen[th] Amendments to the Constitution[,]" and thus cannot disclose said information. (*Id*). Plaintiff refuses to disclose other material information in the application for IFP status on the same basis, including the number of persons who are dependant upon plaintiff for support, the present balances of plaintiff's bank accounts, the amount of cash plaintiff owns, and the value of plaintiff's remaining assets. (*Id.* at 3-4). Plaintiff also refuses to disclose any monthly expenses and outstanding debts. (*Id.* at 4). Without this information, the court is unable to determine whether plaintiff qualifies for leave to proceed without prepayment of fees, rendering dismissal appropriate. *See Woolsey on behalf of R.M.R. v. Mitzel*, No. 1:17-CV-0074 (TJM/DEP), 2017 WL 2241527, at *2 (N.D.N.Y. Feb. 27, 2017), *report and recommendation adopted*, 2017 WL 2242953 (N.D.N.Y. May 22, 2017) ("Without the submission of a completed financial affidavit, an IFP application is incomplete, and this defect alone warrants its denial.") (citing *U.S. v. Copen*, 378 F. Supp. 99, 103 (S.D.N.Y. 1974) ("Leave to proceed in forma pauperis may be obtainable only upon submission by the party of an affidavit made as required by [28 U.S.C. § 1915].").

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (I) frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(I) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp*., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp*., 550 U.S. at 555).

4

## II.   **Amended Complaint**

Much like plaintiff's application for IFP status, the amended complaint[1] is intentionally devoid of significant detail, per plaintiff's purported invocation of Fifth and Fourteenth Amendment rights and the need to protect "substantial private, confidential, and undisclosed material facts."[2]   (*See* AC at 1 n. 1).   Nevertheless, plaintiff alleges to have arrived to the United States in January 2008 under a student visa.   (*Id*. at 20).   Plaintiff initially participated in a Ph.D. program at Idaho State University through a fellowship program.   (*Id*.).   In August 2008, plaintiff transferred to defendant Rensselaer Polytechnic Institute ("RPI") "via a new scholarship contract," which plaintiff refers to as the "RRA."   (*Id*.).

Plaintiff alleges, vaguely, that RPI breached the RRA "in several times and places."   However, plaintiff's main allegations against RPI appear to stem from RPI's investigation into (1) sexual harassment claims made against the plaintiff, and (2) copyright infringement allegations made against plaintiff.   Specifically, plaintiff alleges that an "individual third-party . . . allege[d] several false sexual harassment and several false copyright allegations against [plaintiff] at RPI and likely several other places." (*Id.* at 10).   Plaintiff states that, in July 2011, the individual third-party "notifie[d]" plaintiff of the false allegations, at which time plaintiff attempted to retain an attorney.

---

[1]The court will review plaintiff's amended complaint (Dkt. No. 14), as opposed to the initial complaint (Dkt. No. 1), for purposes of 28 U.S.C. § 1915, in light of plaintiff's recent filing of the amended pleading.  Notably, plaintiff has identified the initial complaint as a "DRAFT," and the amended complaint as the "original complaint." Plaintiff alleges that the initial complaint filed on August 17, 2022 was mailed to the Northern District of California for "prefiling evaluation purposes." (AC at 2).

[2]This includes, but is not limited to, plaintiff's name and other identifying factors.

(*Id.* at 10).  In September 2011, RPI "untimely" opened an internal, "unconstitutional[
]" investigation regarding the allegations.  (*Id.* at 10, 20-21).  On or about November
29, 2011, RPI "maliciously" suspended plaintiff for approximately 88 years, "without
proper due process of the law."  (*Id.* at 10, 20-21, 23).

Specifically with respect to the allegations of copyright infringement, plaintiff
states that in or around 2009 plaintiff co-authored a "lawful paper," which was
published in the Journal of Sexual Medicine ("JSM"), "one of the most controversial
urology journals in the world."  (Dkt. No. 14-1 at 1-2).  Plaintiff states that RPI "falsely
alleges that the JSM paper is a copyright infringement and Roe committed '*academic
dishonesty*, specifically plagiarism, fabrication and/or [unlawful] collaboration.' "  (AC
at 29).  According to an exhibit to the amended complaint, the "incident in question was
brought to [the] Dean's attention by a complaint that noted a 2009 paper published in
the [JSM] . . . constituted plagiarism."  (Dkt. No. 14-1 at 2).  Plaintiff states that despite
"all relevant parties" having been informed of the "false copyright allegations" since
2011, RPI has not filed a complaint in any court with respect to such a claim.  (AC at
29).  Plaintiff asserts that the statute of limitations on such a claim expired in February
2022, and that in failing to take any action on such allegations, RPI "maliciously
accused, defamed, suspended, caused injuries to [plaintiff], upon <u>intentional and
excessive infliction of emotional distress</u> actions and on other basis of national origin,
sex, bias or similarly."  (*Id.* at 30).

Plaintiff further alleges that in 2011, RPI "upon intentional infliction of
emotional distress and actual malice" denied two "independent requests of [plaintiff],

completely impertinent to RPI's false allegations[.]" (Id. at 22).  Specifically, plaintiff

alleges that the requests were for "one semester leave of absence," as well a"one

semester change of status from a full-time to a part-time student."  (*Id.* at 22-23).

Plaintiff alleges that "as a direct result of RPI's maliciously wrongful actions,"

plaintiff has been "excruciatingly suffering from private and confidential physical

injuries" directly caused by RPI's "intentional and excessive infliction of emotional

distress."  (*Id.* at 23-24).  Plaintiff states that in 2021-2022, "upon amelioration of

[plaintiff's] injuries," plaintiff provided "private and confidential cooperative evidence

and . . . proof" that RPI "failed in any and all actions."  (*Id.* at 24).  Plaintiff alleges that

RPI collected this evidence, which was provided for "settlement purposes," and

"move[d] adversely against [plaintiff] by limiting [plaintiff's] access to RPI's web site."

(*Id.* at 24).  Based on these most recent actions, plaintiff alleges that he was "forced to .

. . commence this action . . . in the federal courts[.]" (*Id.* at 25).  Plaintiff alleges over

20 million dollars in damages, including those for lost education and employment

opportunities, "physically incapacitating and excessively excruciating . . . lifelong

injuries," "defamation," and "other private and confidential injuries."  (*Id.* at 26, 38).

## III.  <u>Statute of Limitations</u>

Liberally construed, the court interprets plaintiff's amended complaint to assert

the following claims against RPI: (1) gender discrimination pursuant to Title IX of the

Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq. ("Title IX"); (2)

discrimination based on plaintiff's national origin pursuant to Title VI of the Civil

Rights Act of 1964, 42 U.S.C. § 2000d et seq. (Title VI); (3) sex discrimination

7

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); and (4) state-law claims sounding in defamation and intentional infliction of emotional distress.  However, without reaching the merits of plaintiff's various claims, plaintiff's amended complaint strongly suggest that each of the aforementioned causes of action are time-barred by their respective statute of limitations.  "Although the statute of limitations is an affirmative defense, and must generally await a defense motion, dismissal is appropriate when the facts supporting the statute of limitations defense are set forth in the papers that plaintiff himself submitted." *Ajamian v. Barney*, No. 1:14-CV-306 (DNH/ATB), 2014 WL 2207983, at *5 (N.D.N.Y. May 6, 2014), *report and recommendation adopted*, 2014 WL 2208125 (N.D.N.Y. May 28, 2014) (citing inter alia *Messeroux v. Maimonides Medical Center*, No. 11-CV-5343, 2013 WL 2414690, at *1 (E.D.N.Y. May 31, 2013)).

In this case, plaintiff claims that the defendant's alleged actions – including false accusations of, and a discriminatory investigation into, sexual harassment and copyright infringement allegations against plaintiff – occurred between 2008 and 2012.  (*See* AC at 20-23).  Plaintiff's ultimate suspension from RPI occurred no later than 2012.  (*Id.* at 23). The statute of limitations for each of the respective causes of actions potentially raised by plaintiff do not extend more than three years.  *See Purcell v. New York Inst. of Tech. – Coll. Of Osteopathic Medicine*, 931 F.3d 59, 65 (2d Cir. 2019) (applying three-year statute of limitations to Title IX claims); *Singh v. Wells*, 445 F. App'x 373, 376 (2d Cir. 2011) (applying three-year statute of limitations to Title VI claims); *Gunning v. New York State Just. Ctr. for Prot. of People With Special Needs,* No. 1:19-CV-

1446(GLS/CFH), 2020 WL 5203673, at *3 (N.D.N.Y. Sept. 1, 2020) (applying statutory 300-day period of limitations to claims under Title VII); *Pierre v. Lantern Grp. Found., Inc.*, No. 14-CV-8449, 2016 WL 3461309, at *2 (S.D.N.Y. June 20, 2016) (applying one-year statute of limitations to claims of defamation and intentional infliction of emotional distress, under New York law).  Thus, plaintiff's action is untimely to the extent it was filed in August 2022, almost ten years after the fact.

Plaintiff, perhaps in an attempt to defend the timeliness of this action, has alleged that "most recently," other events have taken place with respect to plaintiff's dispute with RPI.  (AC at 24).  Plaintiff claims that in 2021 and 2022, plaintiff unsuccessfully attempted to negotiate a settlement with RPI regarding the allegations and disciplinary action taken against plaintiff almost a decade prior.  (*Id.* at 24-25).  Plaintiff claims that, as a result of his attempted communication with RPI, the defendant "terminate[d] a part of their RPI's web site, to which [plaintiff] had online access[.]"[3] (*Id.*).  Plaintiff has also suggested that he has been suffering from debilitating health conditions since, and due to, his suspension from RPI.  (*Id.* at 23-24).

Under certain circumstances, a plaintiff's untimely claims may be subject to exception, namely under the continuing violation doctrine and/or equitable tolling.  "Under the continuing violation doctrine, a plaintiff may bring claims for

---

[3]The amended complaint reflects that administrative holds were first applied to plaintiff's account with defendant in 2011 and 2012.  (Dkt. No. 14-1 at 4).  Plaintiff's allegedly restricted access to RPI's website appears to separately stem from a message generated by RPI to former students in general, as opposed to plaintiff individually, indicating that "former constituents no longer have access" to RPI's information system.  (*Id.* at 5).  The site appears to direct "former students or employees" to contact specific departments, i.e. the registrar or human resources, in order to obtain the information they are seeking.  (*Id.*).

discriminatory acts that would have been barred by the statute of limitations as long as an act contributing to that discrimination took place within the statutory time period." *Purcell*, 931 F.3d at 65 (alterations omitted) (quoting *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)). "Therefore, 'a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the defendant to continue unremedied for so long as to amount to a discriminatory policy or practice.' " *Id.* (alteration omitted) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)). Critically, "[t]he continuing violation doctrine . . . applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (alteration omitted) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15(2002)); *see also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) ("A continuing violation is not established merely because an employee continues to feel the effects of a discriminatory act on the part of the employer."); *Chandrapaul v. City Univ. of N.Y.*, No. 14-CV-790, 2016 WL 1611468, at *14 (E.D.N.Y. Apr. 20, 2016) ("[T]he continuing violation exception is 'usually associated with a discriminatory policy, rather than with individual instances of discrimination.' " (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)).

As for equitable tolling, this doctrine is available in "rare and exceptional" cases where "extraordinary circumstances prevented a party from timely performing a

required act," and "the party acted with reasonable diligence throughout the period" to be tolled. *See Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005). In considering whether equitable tolling applies, courts consider whether the party seeking its application: "(1) has acted 'with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli–Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). "[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).  Instead, equitable tolling may be appropriate where, for instance, "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct . . . ." *Id*.; *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (noting that equitable tolling should apply only in "rare and exceptional circumstance[s]").

As is relevant here, "when asserting that a medical condition should toll the statute, a plaintiff's 'conclusory and vague claim[s], without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling.' " *Barr v. Bass Pro Outdoor World, LLC*, No. 5:17-CV-00378 (BKS/ML), 2019 WL 6828987, at *9 (N.D.N.Y. Dec. 13, 2019) (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (holding that equitable tolling was not

available when the plaintiff alleged that she suffered from paranoia, panic attacks, and depression)); *see also Swanton v. Graham*, No. 07-CV-4113, 2009 WL 1406969, at *5, (E.D.N.Y. May 19, 2009) (concluding that equitable tolling was not warranted where the plaintiff "failed to provide the Court with any objective evidence substantiating his claims of disability, detailing how long such a disability lasted, or describing how the disability was causally related to his failure to timely file").

Here, plaintiff has failed to allege any facts suggesting that the aforementioned doctrines would apply to the instant action. Nothing in the amended complaint suggests a continuing violation of plaintiff's rights or policy of discrimination extending beyond plaintiff's date of suspension. Nor do plaintiff's vague claims of debilitating injury, without more, demonstrated that the circumstances are so rare and exceptional, so as to warrant equitable tolling. Accordingly, the court finds that the claims raised in plaintiff's amended complaint are likely subject to dismissal for statute of limitations purposes. For the reasons discussed later in this decision, the court will provide plaintiff with an opportunity to allege why his action is, in fact, timely, before recommending dismissal to the district judge on this basis.

## IV.    <u>Proceeding under a Pseudonym</u>

As a general rule, parties may not litigate their disputes anonymously. "The people have a right to know who is using their courts." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)). Thus, Rule 10(a) of the Federal Rules of Civil Procedure states that "[t]he title of the complaint must name all the parties." Fed.

R. Civ. P. 10(a). "This requirement . . . serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff*, 537 F.3d at 188-89.

At the same time, in certain "sensitive situations, some materials, including the names of parties, may be under judicial seal." *In re New York Times Co. to Unseal Wiretap and Search Warrant Materials*, 577 F.3d 401, 410 n. 4 (2d Cir. 2009). There are "a limited number of exceptions to the general requirement of disclosure of the names of parties, which permit plaintiffs to proceed anonymously." *Sealed Plaintiff*, 537 F.3d at 189 (citation omitted). To decide whether a plaintiff may be allowed to prosecute an action using a pseudonym, "the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id*. In *Sealed Plaintiff*, the Second Circuit articulated a non-exhaustive list of ten factors courts should consider when faced with an application to proceed under a pseudonym:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature, (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties, (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity, (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age, (5) whether the suit is challenging the actions of the government or that of private parties, (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court,

(7) whether the plaintiff's identity has thus far been kept confidential, (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity, (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities, and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id*. at 189-90 (citations omitted).  The court is not required "to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id.* at 189, 191 n.4. "[P]seudonyms are the exception and not the rule, and in order to receive the protections of anonymity, a party must make a case rebutting that presumption." *U.S. v. Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020).

For the following reasons, the court concludes that plaintiff has not demonstrated that this case is the exceptional one, in which plaintiff should be allowed to proceed anonymously.[4]  Admittedly, the first factor of the analysis weighs in favor of plaintiff,

---

[4]Although plaintiff has not filed a formal motion in this respect, the court interprets plaintiff's amended complaint as a request to proceed under a pseudonym.  The court also notes that the amended complaint is shrouded in vague language and has been filed in partially redacted form, based on plaintiff's contention that plaintiff must protect private and confidential material facts.  (See AC generally).  Plaintiff has denoted those material facts which must allegedly be protected throughout the amended complaint with the symbols "‡‡" and "*****." (AC at 1).  These symbols appear on almost every page of the complaint, and substantially limit the court's ability to properly assess whether plaintiff has sufficiently stated a cause of action.  Fed. R. Civ. P. 8 requires a " 'short and plain statement' " of a claim, showing that 'the pleader is entitled to relief.' " *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)).  Each statement must be " 'simple, concise, and direct,' and must give 'fair notice of the claims asserted.' " *Id*. (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.' " *Id.*

as other courts have found matters of sexual harassment are highly sensitive, and this litigation appears to implicate similar concerns. See *A.B. v. C.D.*, No. 17-CV-5840, 2018 WL 1935999, at *2 (E.D.N.Y. Apr. 24, 2018) (in defamation suit, finding "the litigation here involves matters that are of a highly sensitive and personal nature, as the case relates - in part - to allegations of sexual harassment and misconduct"); *A.B. v. Hofstra Univ.*, No. 17-CV-5562, 2018 WL 1935986, at *2 (E.D.N.Y. Apr. 24, 2018) (same).

Nevertheless, the majority of the remaining factors weigh against allowing plaintiff to proceed under a pseudonym.  Plaintiff has not identified any physical or mental harm that would result in his or her identification in this lawsuit, nor has plaintiff identified any nonspeculative additional harms beyond that already alleged to have been suffered.  *See Doe #1 v. Syracuse University*, No. 5:18-CV-496 (FJS/DEP), 2018 WL 7079489, at *6 (N.D.N.Y. Sept. 10, 2018) (citing *Doe I v. Individuals*, 561 F. Supp. 2d 249, 257 (D. Conn. 2008)) ("Many courts are reluctant to allow a party to maintain anonymity merely to protect the person's economic or professional life."), *report and recommendation adopted*, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020).

Furthermore, because plaintiff is an adult, the fourth factor weighs against proceeding anonymously. *See Doe #1*, 2018 WL 7079489, at *6 ("The fourth relevant factor, which examines whether [P]laintiff[ is] vulnerable to the potential harms of disclosure, generally relates to [his] age[ ].") (citing *Sealed Plaintiff*, 537 F.3d at 190; *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. Dec. 11, 2006) ("[C]ourts have been readier to protect the privacy of infant plaintiffs than of adults, whether because the

children are conceived as more vulnerable or because the child whose privacy is at stake has not chosen for himself or herself to pursue the litigation.")).  This is also true for the fifth factor, in light of the fact that plaintiff's claim is challenging the actions of a private party.  *See Del Rio*, 241 F.R.D. at 159 (The courts recognize "there is a significant interest in open judicial proceedings even in ordinary civil litigation [because they] do not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms.").

With respect to the sixth factor, the court must consider whether permitting a plaintiff to proceed anonymously would frustrate a defendant's ability to participate in the case, whether it would cause reputational injury to the defendant, and whether it would undermine principles of fundamental fairness. *See Doe v. Townes*, No. 19-CV-8034, 2020 WL 2395159, at *5 (S.D.N.Y. May 12, 2020).  Because the named defendant has not had an opportunity to oppose plaintiff's anonymity, the court cannot conclude that RPI would be prejudiced at this juncture.  However, factor seven seems to cut against proceeding anonymously, to the extent that "a defamation action by its very definition involves disclosure to a third party." *Roe v. Does 1-11*, No. 20-CV-3788, 2020 WL 6152174, at *4 (E.D.N.Y. Oct. 14, 2020).  Indeed, plaintiff alleges that third parties other than defendant were informed of defendant's "false copyright allegations" as early as 2011.  (AC at 29).[5]

---

[5]In his original complaint, filed publicly on the court docket, one of plaintiff's exhibits provides sufficient information regarding the published article which RPI allegedly required him to retract that identifying plaintiff by name is easily accomplished through an obvious internet search.  This casts doubt on whether plaintiff's identity has "thus far been kept confidential"–the seventh factor to be considered in deciding whether to allow a litigant to proceed under a pseudonym.

The eighth and ninth factors direct courts to balance whether the public's interest in the litigation is furthered by disclosure of the plaintiff's identity. *See Sealed Plaintiff*, 537 F.3d at 190. "Where the litigation involves, not abstract challenges to public policies, but rather . . . particular action and incidents, open proceedings nevertheless benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication." *North Jersey Media Grp Inc. v. Doe, Nos. 1-5*, No. 12-CV-6152, 2012 WL 5899331, at *8 (S.D.N.Y. Nov. 26, 2012) (internal quotations omitted).  Here, the allegations do not involve abstract questions of law, but specific factual allegations of harassment and other mistreatment by defendant. These issues "further the public's interest in enforcing legal and social norms." *Doe v. Skyline Automobiles Inc.,* 375 F. Supp. 3d 401, 408 (S.D.N.Y. 2019) (citing *North Jersey*, 2012 WL 5899331, at *8).  Thus, the eighth and ninth factors weigh against proceeding anonymously.

The tenth and last factor is whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff. *Sealed Plaintiff*, 537 F.3d at 190. If a viable alternative to complete anonymity exists, this factor weighs against a finding for anonymity. *See Doe v. United States*, No. 16-CV-7256, 2017 WL 2389701, at *2 (S.D.N.Y. June 1, 2017) (determining that it would be inappropriate for the plaintiff to proceed under a pseudonym where alternative measures could be taken to protect his privacy interest). Here, sealing and redacting certain documents, where appropriate, are sufficient alternatives to anonymity and, in fact, routinely done in cases involving sensitive matters. *Anonymous v. Medco Health Sols., Inc*., 588 F. App'x 34, 35 (2d Cir.

2014) (rejecting the assertion that a plaintiff's medical condition and its economic effect on career prospects justified the plaintiff's request to proceed under a pseudonym); *see Skyline Auto*., 375 F. Supp. 3d at 408 (citing *Doe v. United States*, 2017 WL 2389701, at *2) ("There are multiple other ways a plaintiff's interest can be protected, including the redaction of documents and sealing. Further Plaintiff could seek a protective order, or the parties could enter a confidentiality agreement.").  The abundance of alternative, less extreme, mechanisms to guard plaintiff's sensitive information weighs strongly against plaintiff's request to proceed under a pseudonym.

Accordingly, upon balancing the interests of plaintiff, defendant, and the public, the relevant factors weigh against permitting plaintiff to proceed anonymously in this case.  Indeed, at least one other court in this circuit, faced with a plaintiff suing for defamation and alleging he was falsely accused of sexual assault/harassment, has come to the same conclusion, also noting that, "such plaintiffs have proceeded under their own names" in similar cases.  *Roe v. Does 1-11*, 2020 WL 6152174, at *6 (citing *Elliott v. Donegan*, __ F. Supp. 3d __, No. 18-CV-5680, 2020 WL 3545155, at *1–2 (E.D.N.Y. June 30, 2020)).

## V.   **Opportunity to Amend**

### A.   **Legal Standards**

Generally, before the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is present when the problem with

plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

## B.    Application

As a threshold issue, plaintiff's IFP application is incomplete, warranting dismissal in itself. However, rather than denying plaintiff's application for IFP and recommending dismissal at this time, the court will afford the plaintiff forty-five (45) days within which to resubmit the IFP application, or pay the filing fee, in order to proceed with this action.

In addition, plaintiff's amended complaint, as currently alleged, suggests that the action may be subject to dismissal as time barred. As previously discussed, the Second Circuit has held that dismissal, *sua sponte*, is appropriate where the existence of an affirmative defense, such as untimeliness, is plain from the face of the complaint. *See Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011). However, the Second Circuit has likewise cautioned district courts not to dismiss a pro se action *sua sponte* on statute of limitations grounds without giving a pro se litigant notice and an opportunity to be heard. *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).  Thus, the court will allow plaintiff, within the same forty-five (45) day period, to file an amended pleading and resubmit it to this court for review.  In light of this court's finding that plaintiff may not proceed under a pseudonym, plaintiff must reveal his identity and substitute his name for that of J. Roe in any amended pleading going forward.  If plaintiff chooses to amend, the court will make a recommendation based on the amended pleading.  In what would be plaintiff's second amended complaint,

plaintiff must alleges facts showing why the action is timely, or why the applicable limitation periods should be equitably tolled.  Plaintiff is also reminded that the court will not accept cryptic allegations, nor symbolic denotations, as substitutions for the necessary facts required to be plead in order to state a claim. Nor will the court accept a "draft" of any amended pleading for filing, or allow the action to proceed based on references to future, "related" cases.

If plaintiff does not choose to file a second amended complaint, I will base my recommendation on the amended complaint. Any second amended complaint that plaintiff files must be a complete pleading, and plaintiff must restate the allegations, including any new facts, in the second amended complaint. Any further amended pleading will supercede the previous complaints filed, and plaintiff may not incorporate any part of the previously filed pleadings by reference.  To be clear, if this court finds that plaintiff has not satisfied the filing fee requirements at that time, I will recommend that the district court dismiss plaintiff's action, regardless of the sufficiency of any further amended pleadings.

## VI.   **Motion to Seal**

Plaintiff has filed an "ex parte motion to seal records," seeking to seal the six exhibits attached to plaintiff's initial complaint, along with "other future sealing-required filings of this case and . . . related cases . . . without submissions of further and separate motions to seal."  (Dkt. No. 6 at 4).  These exhibits were not directly attached to plaintiff's amended complaint, however plaintiff cites to them throughout the document.  For the following reasons, the court will deny plaintiff's motion to seal.

As the Second Circuit has stated, "[t]he common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (citing *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (*Amodeo I*)).  Before this right attaches, however, the court must conclude that the documents at issue are "judicial documents," which are those that are " 'relevant to the performance of the judicial function and useful in the judicial process.' " *Id*. (quoting *Amodeo I*, *supra*).  The Second Circuit has resolved that a complaint is a judicial document subject to a presumption of access.  *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139-40 (2d Cir. 2016).

Once the documents are determined to be judicial documents, and the presumption of access attaches, then the court must consider the weight of that presumption by determining the role of the materials at issue in the exercise of judicial power and the resulting value of such information to those who monitor the federal courts. *Id.* (citing *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) (*Amodeo II*)). Where the particular document or documents are usually filed with the court and are "generally" available, the weight of the presumption is stronger than when a document is generally filed under seal. *Amodeo II*, 75 F.3d at 1050.

The court considers privacy interests of "third" parties and the degree to which the subject matter is traditionally considered private. *Lugosch*, 435 F.3d at 120; *Amodeo II*, 75 F.3d at 1051 (citations omitted). Motions to seal must be " 'carefully and skeptically review[ed] . . . to insure that there really is an extraordinary circumstance or compelling need' to seal the documents from public inspection." *Under Seal v. Under*

21

*Seal*, No. 16-CV-7820, 2017 WL 3432720, at *3 (S.D.N.Y. Aug. 10, 2017) (citing

*Video Software Dealers Ass'n v. Orion Pictures*, 21 F.3d 24, 27 (2d Cir. 1994)).

Documents may be sealed if "specific, on the record findings are made demonstrating

that closure is essential to preserve higher values and is narrowly tailored to serve that

interest." *Fitzpatrick v. American Internat'l Grp*., No. 10 Civ. 142, 2012 WL 4378098,

at *1 (S.D.N.Y. Sept. 24, 2012) (citation omitted).

Here, plaintiff requests that the following exhibits to the initial complaint be

sealed (See Dkt. No. 6 at 5): (1) a collection of sworn declarations, from separate

lawsuits commenced in other district courts, complaining about the conduct of non-

party individual Nicole Prause (Dkt. No. 1-1); (2) an amended complaint from the

Western District of Texas, in which Nicole Prause is a named defendant (Dkt. No. 1-2);

(3) two August 15, 2022 "private and confidential" letters from plaintiff to the clerk and

deputy clerk of the Northern District of California, requesting a "preliminary

evaluation" of plaintiff's motions and complaint, and attaching various documents

including an apparent settlement submission and plaintiff's JSM paper (Dkt. Nos. 1-3;

1-4); and (4) a civil cover sheet (marked as "draft") filed by plaintiff with respect to this

action, and a copy of an envelope addressed from plaintiff to the clerk's office in the

Northern District of California (Dkt. Nos. 1-5; 1-6).

Having reviewed the aforementioned documents, the court finds no basis for

sealing.  Plaintiff states that sealing these exhibits is appropriate, because they contain

"personally identifiable information and other information . . . protected under the

privacy and confidentiality laws . . . ." (Dkt. No. 6 at 4).  However, the majority of the

documents which plaintiff seeks to seal either have no direct relationship to the instant action or any named parties, or constitute ordinary clerical paperwork prepared in the normal course of filing with the this court.  With respect to plaintiff's correspondence with the clerk's office, and the settlement submission attached thereto, plaintiff appears to have already redacted any "personally identifiable information" from these documents.  Accordingly, plaintiff's motion to seal the exhibits to the initial complaint is denied.  If plaintiff files any amended pleadings pursuant to the directives of this court, plaintiff must attach any and all relevant exhibits to that pleading, as prior filings and/or their exhibits will not be incorporated by reference.

VII.  **Motion for ECF Login and Password**

Plaintiff has filed another ex parte motion, seeking to obtain an ECF login and password.  (Dkt. No. 13).  Because plaintiff has not sufficiently provided the requested information in his form motion, plaintiff's motion is denied with leave to renew.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application for IFP status (Dkt. No. 3) is **DEFERRED AT THIS TIME**, and it is

**ORDERED**, that plaintiff shall have forty-five (45) days from the date of this order to file a complete IFP application for this court's review; and it is

**ORDERED**, that plaintiff shall have forty-five (45) days from the date of this order to amend his amended complaint (or to request an extension of time to do so) in order to address the deficiencies specifically noted in the above decision, and it is

**ORDERED**, that when plaintiff files a second amended complaint – or upon the

expiration of plaintiff's time to do so – the Clerk shall send this case back to me for further review,[6] and it is

     **ORDERED**, that plaintiff's request to proceed with this action by means of a pseudonym is **DENIED**; and it is further

     **ORDERED** that plaintiff's motion to seal the exhibits to the initial complaint[7] (Dkt. No. 6) is **DENIED,** to the extent it has not been rendered moot; and it is further

     **ORDERED** that plaintiff's motion to obtain an ECF login and password (Dkt. No. 13) is **DENIED**, without prejudice, and it is further

     **ORDERED**, that the Clerk serve a copy of this Order upon plaintiff in accordance with the Local Rules.

Dated: October 12, 2022

Andrew T. Baxter
U.S. Magistrate Judge

---

[6] If the plaintiff does not choose to file a second amended complaint, this court will make appropriate recommendations to the district judge with respect to the amended complaint.

[7] Specifically, Docket Numbers 1-1, 1-2, 1-3, 1-4, 1-5, and 1-6.