# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

J. ROE,

Plaintiff,

   v.                  1:22-CV-932
                        (TJM/ATB)

RPI,

Defendant.

J. ROE, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

Plaintiff filed this complaint in the Northern District of California on August 17, 2022, together with an application to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1 (Complaint ("Compl.")); 3). The action was subsequently transferred to the Northern District of New York, where it was referred to me for an initial review. (Dkt. No. 11). Prior to my review of the complaint, plaintiff filed what this court interpreted to be an amended complaint on October 3, 2022. (Dkt. No. 14) (Amended Complaint ("AC")).

On October 12, 2022, after my initial review of the amended complaint, I found that plaintiff's application for IFP was incomplete, and that plaintiff's amended complaint failed to state a claim in many respects. However, rather than recommending dismissal at that time, I issued an order deferring consideration of plaintiff's IFP application, and provided plaintiff the opportunity to submit a complete IFP application. I further granted plaintiff leave to file a second amended complaint, in order to address the deficiencies noted by the court in the amended complaint. (Dkt.

No. 15).[1]

In my October 12, 2022 decision and order, I afforded plaintiff forty five (45) days to submit a second amended complaint, and noted that if plaintiff did not submit a proposed second amended complaint or request an extension of time within which to do so, I would issue a report-recommendation based on the original filings.  (Dkt. No. 15). On November 4, 2022, plaintiff filed a "Motion for Extension of Time to File a completed IFP Application and Amended Complaint," which was stricken from the docket based on the relief afforded in this courts October 12th decision and order.  (Dkt. Nos. 16, 17).  To the extent plaintiff was seeking reconsideration of this court's October 12th decision and order, I denied plaintiff's request, but afforded plaintiff an extended deadline to submit a complete IFP application and second amended complaint to December 30, 2022.  (Dkt. No. 17).

The deadline for plaintiff to file a complete IFP application and second amended complaint has passed, and the original filings have been returned to me for further action.  Moreover, on December 14, 2022, plaintiff filed a "motion to disqualify the referral judge," which is also before this court for review.[2]

## I.   **IFP Application**

In my October 12, 2022 decision and order, I found that plaintiff's IFP

---

[1]In the same decision and order, I also (1) denied plaintiff permission to proceed under a pseudonym, (2) denied plaintiff's motion to seal the exhibits to the initial complaint (Dkt. No. 6), and (3) denied plaintiff's motion to obtain an ECF login and password (Dkt. No. 13).

[2]Plaintiff also recently filed a "proposed order for plaintiff's proceeding under a pseudonym" and "proposed order for plaintiff's application to proceed in forma pauperis" on February 28, 2023, neither of which was requested by this court, nor is it relief which this court has granted.

application was deficient, warranting dismissal in itself.  In support of the IFP application, plaintiff filed a document entitled "Ex Parte Motion to Proceed," which plaintiff purports to have been "adopted from a related forma pauperis application" from the Northern District of California.  (Dkt. No. 3 at 1).  In conjunction with plaintiff's November 4, 2022 motion for extension of time to file a completed IFP application and amended complaint, plaintiff submitted another application to proceed IFP on a form specific to the N.D.N.Y. (Dkt. No. 16-1 at CM/ECF pp. 11-12).  This application, however, was subsequently stricken pursuant to my November 7, 2022 text order, and as discussed below contains the same deficiencies as those noted in petitioner's original IFP application.

The IFP applications submitted by plaintiff, to date, are deficient for several reasons.  Plaintiff claims to be "involuntarily forced to protect substantial private, confidential, and undisclosed material facts," pursuant to the "Fifth and Fourteen[th] Amendments to the Constitution[,]" and thus cannot disclose the majority of the financial information required by this court to make a determination as to plaintiff's financial eligibility. (Dkt. No 3 at 2; Dkt. No. 16-1 at CM/ECF pp. 11).  Plaintiff refuses to disclose the number of persons who are dependant upon plaintiff for support, the present balances of plaintiff's bank accounts, the amount of cash plaintiff owns, and the value of plaintiff's remaining assets.  (Dkt. No 3 at 2-3; Dkt. No. 16-1 at CM/ECF pp. 11-12).  Plaintiff also refuses to disclose any monthly expenses and outstanding debts.  (*Id.*).  Without this information, the court is unable to determine whether plaintiff qualifies for leave to proceed without prepayment of fees, rendering dismissal

appropriate. *See Woolsey on behalf of R.M.R. v. Mitzel*, No. 1:17-CV-0074 (TJM/DEP), 2017 WL 2241527, at *2 (N.D.N.Y. Feb. 27, 2017), *report and recommendation adopted*, 2017 WL 2242953 (N.D.N.Y. May 22, 2017) ("Without the submission of a completed financial affidavit, an IFP application is incomplete, and this defect alone warrants its denial.") (citing *U.S. v. Copen*, 378 F. Supp. 99, 103 (S.D.N.Y. 1974) ("Leave to proceed in forma pauperis may be obtainable only upon submission by the party of an affidavit made as required by [28 U.S.C. § 1915].").

Because plaintiff has still not filed a complete IFP application, the court must recommend dismissal. However, even if plaintiff were to ultimately be granted IFP, or if plaintiff pays the fee, the court nevertheless recommends dismissing plaintiff's amended complaint for failure to state a claim for relief, as explained in my October 12, 2022 decision and order and as further set forth below.

## II.   **Amended Complaint**

For clarity, I will repeat the facts as stated in my October 12, 2022 decision and order. Much like plaintiff's application for IFP status, the amended complaint[3] is intentionally devoid of significant detail, per plaintiff's purported invocation of Fifth and Fourteenth Amendment rights and the need to protect "substantial private, confidential, and undisclosed material facts."[4]  (*See* AC at 1 n. 1).  Nevertheless,

---

[3] The court will review plaintiff's amended complaint (Dkt. No. 14), as opposed to the initial complaint (Dkt. No. 1), for purposes of 28 U.S.C. § 1915, in light of plaintiff's recent filing of the amended pleading.  Notably, plaintiff has identified the initial complaint as a "DRAFT," and the amended complaint as the "original complaint." Plaintiff alleges that the initial complaint filed on August 17, 2022 was mailed to the Northern District of California for "prefiling evaluation purposes." (AC at 2).

[4] This includes, but is not limited to, plaintiff's name and other identifying factors.

4

plaintiff alleges to have arrived to the United States in January 2008 under a student visa.  (*Id*. at 20).  Plaintiff initially participated in a Ph.D. program at Idaho State University through a fellowship program.  (*Id*.).  In August 2008, plaintiff transferred to defendant Rensselaer Polytechnic Institute ("RPI") "via a new scholarship contract," which plaintiff refers to as the "RRA."  (*Id*.).

Plaintiff alleges, vaguely, that RPI breached the RRA "in several times and places."  However, plaintiff's main allegations against RPI appear to stem from RPI's investigation into (1) sexual harassment claims made against the plaintiff, and (2) copyright infringement allegations made against plaintiff.  Specifically, plaintiff alleges that an "individual third-party . . . allege[d] several false sexual harassment and several false copyright allegations against [plaintiff] at RPI and likely several other places." (*Id.* at 10).  Plaintiff states that, in July 2011, the individual third-party "notifie[d]" plaintiff of the false allegations, at which time plaintiff attempted to retain an attorney. (*Id.* at 10).  In September 2011, RPI "untimely" opened an internal, "unconstitutional[ ]" investigation regarding the allegations.  (*Id.* at 10, 20-21).  On or about November 29, 2011, RPI "maliciously" suspended plaintiff for approximately 88 years, "without proper due process of the law."  (*Id.* at 10, 20-21, 23).

Specifically with respect to the allegations of copyright infringement, plaintiff states that in or around 2009 plaintiff co-authored a "lawful paper," which was published in the Journal of Sexual Medicine ("JSM"), "one of the most controversial urology journals in the world."  (Dkt. No. 14-1 at 1-2).  Plaintiff states that RPI "falsely alleges that the JSM paper is a copyright infringement and Roe committed '*academic*

5

*dishonesty*, specifically plagiarism, fabrication and/or [unlawful] collaboration.' " (AC at 29).  According to an exhibit to the amended complaint, the "incident in question was brought to [the] Dean's attention by a complaint that noted a 2009 paper published in the [JSM] . . . constituted plagiarism." (Dkt. No. 14-1 at 2).  Plaintiff states that despite "all relevant parties" having been informed of the "false copyright allegations" since 2011, RPI has not filed a complaint in any court with respect to such a claim.  (AC at 29).  Plaintiff asserts that the statute of limitations on such a claim expired in February 2022, and that in failing to take any action on such allegations, RPI "maliciously accused, defamed, suspended, caused injuries to [plaintiff], upon <u>intentional and excessive infliction of emotional distress</u> actions and on other basis of national origin, sex, bias or similarly." (*Id.* at 30).

Plaintiff further alleges that in 2011, RPI "upon intentional infliction of emotional distress and actual malice" denied two "independent requests of [plaintiff], completely impertinent to RPI's false allegations[.]" (*Id*. at 22).  Specifically, plaintiff alleges that the requests were for "one semester leave of absence," as well a"one semester change of status from a full-time to a part-time student."  (*Id.* at 22-23).

Plaintiff alleges that "as a direct result of RPI's maliciously wrongful actions," plaintiff has been "excruciatingly suffering from private and confidential physical injuries" directly caused by RPI's "intentional and excessive infliction of emotional distress." (*Id.* at 23-24).  Plaintiff states that in 2021-2022, "upon amelioration of [plaintiff's] injuries," plaintiff provided "private and confidential cooperative evidence and . . . proof" that RPI "failed in any and all actions." (*Id.* at 24).  Plaintiff alleges that

RPI collected this evidence, which was provided for "settlement purposes," and "move[d] adversely against [plaintiff] by limiting [plaintiff's] access to RPI's web site." (*Id.* at 24).  Based on these most recent actions, plaintiff alleges that he was "forced to . . . commence this action . . . in the federal courts[.]" (*Id.* at 25).  Plaintiff alleges over 20 million dollars in damages, including those for lost education and employment opportunities, "physically incapacitating and excessively excruciating . . . lifelong injuries," "defamation," and "other private and confidential injuries."  (*Id.* at 26, 38).

## III.   <u>Statute of Limitations</u>

Liberally construed, the court interprets plaintiff's amended complaint to assert the following claims against RPI: (1) gender discrimination pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq. ("Title IX"); (2) discrimination based on plaintiff's national origin pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. (Title VI); (3) sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); and (4) state-law claims sounding in defamation and intentional infliction of emotional distress.  However, without reaching the merits of plaintiff's various claims, plaintiff's amended complaint strongly suggests that each of the aforementioned causes of action are time-barred by their respective statute of limitations.  "Although the statute of limitations is an affirmative defense, and must generally await a defense motion, dismissal is appropriate when the facts supporting the statute of limitations defense are set forth in the papers that plaintiff himself submitted." *Ajamian v. Barney*, No. 1:14-CV-306 (DNH/ATB), 2014 WL 2207983, at *5 (N.D.N.Y. May 6, 2014),

*report and recommendation adopted*, 2014 WL 2208125 (N.D.N.Y. May 28, 2014) (citing inter alia *Messeroux v. Maimonides Medical Center*, No. 11-CV-5343, 2013 WL 2414690, at *1 (E.D.N.Y. May 31, 2013)).

In this case, plaintiff claims that the defendant's alleged actions – including false accusations of, and a discriminatory investigation into, sexual harassment and copyright infringement allegations against plaintiff – occurred between 2008 and 2012.  (*See* AC at 20-23).  Plaintiff's ultimate suspension from RPI occurred no later than 2012.  (*Id.* at 23). The statute of limitations for each of the respective causes of actions potentially raised by plaintiff do not extend more than three years.  *See Purcell v. New York Inst. of Tech. – Coll. Of Osteopathic Medicine*, 931 F.3d 59, 65 (2d Cir. 2019) (applying three-year statute of limitations to Title IX claims); *Singh v. Wells*, 445 F. App'x 373, 376 (2d Cir. 2011) (applying three-year statute of limitations to Title VI claims); *Gunning v. New York State Just. Ctr. for Prot. of People With Special Needs,* No. 1:19-CV-1446(GLS/CFH), 2020 WL 5203673, at *3 (N.D.N.Y. Sept. 1, 2020) (applying statutory 300-day period of limitations to claims under Title VII); *Pierre v. Lantern Grp. Found., Inc*., No. 14-CV-8449, 2016 WL 3461309, at *2 (S.D.N.Y. June 20, 2016) (applying one-year statute of limitations to claims of defamation and intentional infliction of emotional distress, under New York law).  Thus, plaintiff's action is untimely to the extent it was filed in August 2022, almost ten years after the fact.

Plaintiff, perhaps in an attempt to defend the timeliness of this action, has alleged that "most recently," other events have taken place with respect to plaintiff's dispute with RPI.  (AC at 24).  Plaintiff claims that in 2021 and 2022, plaintiff unsuccessfully

attempted to negotiate a settlement with RPI regarding the allegations and disciplinary action taken against plaintiff almost a decade prior. (*Id.* at 24-25). Plaintiff claims that, as a result of his attempted communication with RPI, the defendant "terminate[d] a part of their RPI's web site, to which [plaintiff] had online access[.]"[5] (*Id.*). Plaintiff has also suggested that he has been suffering from debilitating health conditions since, and due to, his suspension from RPI. (*Id.* at 23-24).

Under certain circumstances, a plaintiff's untimely claims may be subject to exception, namely under the continuing violation doctrine and/or equitable tolling. "Under the continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the statute of limitations as long as an act contributing to that discrimination took place within the statutory time period." *Purcell*, 931 F.3d at 65 (alterations omitted) (quoting *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)). "Therefore, 'a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the defendant to continue unremedied for so long as to amount to a discriminatory policy or practice.' " *Id.* (alteration omitted) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)). Critically, "[t]he continuing violation doctrine . . . applies not

---

[5]The amended complaint reflects that administrative holds were first applied to plaintiff's account with defendant in 2011 and 2012. (Dkt. No. 14-1 at 4). Plaintiff's allegedly restricted access to RPI's website appears to separately stem from a message generated by RPI to former students in general, as opposed to plaintiff individually, indicating that "former constituents no longer have access" to RPI's information system. (*Id.* at 5). The site appears to direct "former students or employees" to contact specific departments, i.e. the registrar or human resources, in order to obtain the information they are seeking. (*Id.*).

to discrete unlawful acts, even where those discrete acts are part of a 'serial violation,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (alteration omitted) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002)); *see also Lightfoot v. Union Carbide Corp*., 110 F.3d 898, 907 (2d Cir. 1997) ("A continuing violation is not established merely because an employee continues to feel the effects of a discriminatory act on the part of the employer."); *Chandrapaul v. City Univ. of N.Y.*, No. 14-CV-790, 2016 WL 1611468, at *14 (E.D.N.Y. Apr. 20, 2016) ("[T]he continuing violation exception is 'usually associated with a discriminatory policy, rather than with individual instances of discrimination.' " (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)).

As for equitable tolling, this doctrine is available in "rare and exceptional" cases where "extraordinary circumstances prevented a party from timely performing a required act," and "the party acted with reasonable diligence throughout the period" to be tolled. *See Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005). In considering whether equitable tolling applies, courts consider whether the party seeking its application: "(1) has acted 'with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli–Edelglass v. N.Y. City Transit Auth*., 333 F.3d 74, 80–81 (2d Cir. 2003) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). "[T]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of*

*Veterans Affairs*, 498 U.S. 89, 96 (1990).  Instead, equitable tolling may be appropriate where, for instance, "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct . . . ." *Id.*; *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (noting that equitable tolling should apply only in "rare and exceptional circumstance[s]").

As is relevant here, "when asserting that a medical condition should toll the statute, a plaintiff's 'conclusory and vague claim[s], without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling.' " *Barr v. Bass Pro Outdoor World, LLC*, No. 5:17-CV-00378 (BKS/ML), 2019 WL 6828987, at *9 (N.D.N.Y. Dec. 13, 2019) (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (holding that equitable tolling was not available when the plaintiff alleged that she suffered from paranoia, panic attacks, and depression)); *see also Swanton v. Graham*, No. 07-CV-4113, 2009 WL 1406969, at *5, (E.D.N.Y. May 19, 2009) (concluding that equitable tolling was not warranted where the plaintiff "failed to provide the Court with any objective evidence substantiating his claims of disability, detailing how long such a disability lasted, or describing how the disability was causally related to his failure to timely file").

In my October 12, 2022 decision and order, I noted that plaintiff has failed to allege any facts suggesting that the aforementioned doctrines would apply to the instant action.  Nothing in the amended complaint suggests a continuing violation of plaintiff's

rights or policy of discrimination extending beyond plaintiff's date of suspension.  Nor do plaintiff's vague claims of debilitating injury, without more, demonstrated that the circumstances are so rare and exceptional, so as to warrant equitable tolling. Nevertheless, in an abundance of caution I provided plaintiff with an opportunity to be heard on the issue of the timeliness of the claims and allowed for the submission of a second amended complaint, before recommending dismissal on such basis.  Plaintiff, however, has not submitted a proposed amended pleading alleging why the instant action is timely, despite being afforded an opportunity to do so.  In plaintiff's most recent filing with this court, plaintiff merely asserts that "if the statute of limitations . . . were any failure of plaintiff, the case would have been dismissed by the Hon. Ryu at the U.S. District Court for the Northern District of California and would not have been transferred immediately to this Court."  (Dkt. No. 18 at 11).  Not only is this assertion patently incorrect, it provides the court no basis on which to suggest that equitable tolling or the continuing violations doctrine applies to the instant matter.  Accordingly, the court the court must recommend dismissal of the amended complaint based on the expiration of the statute of limitations.

## IV.  <u>Fed. R. Civ. P. 8 and 10(a)</u>

Fed. R. Civ. P. 8 requires a " 'short and plain statement' " of a claim, showing that 'the pleader is entitled to relief.'" *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be " 'simple, concise, and direct,' and must give 'fair notice of the claims asserted.'" *Id.* (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  "A complaint may be dismissed under Rule 8

if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Id*.

Moreover, as a general rule, parties may not litigate their disputes anonymously. "The people have a right to know who is using their courts." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008) (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)). Thus, Rule 10(a) of the Federal Rules of Civil Procedure states that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). "This requirement . . . serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff*, 537 F.3d at 188-89.

At the same time, in certain "sensitive situations, some materials, including the names of parties, may be under judicial seal." *In re New York Times Co. to Unseal Wiretap and Search Warrant Materials*, 577 F.3d 401, 410 n. 4 (2d Cir. 2009). There are "a limited number of exceptions to the general requirement of disclosure of the names of parties, which permit plaintiffs to proceed anonymously." *Sealed Plaintiff*, 537 F.3d at 189 (citation omitted). To decide whether a plaintiff may be allowed to prosecute an action using a pseudonym, "the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." *Id*. In *Sealed Plaintiff*, the Second Circuit articulated a non-exhaustive list of ten factors courts should consider when faced with an application to proceed under a pseudonym:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature, (2) whether identification

poses a risk of retaliatory physical or mental harm to the party
seeking to proceed anonymously or even more critically, to
innocent non-parties, (3) whether identification presents other
harms and the likely severity of those harms, including whether
the injury litigated against would be incurred as a result of the
disclosure of the plaintiff's identity, (4) whether the plaintiff is
particularly vulnerable to the possible harms of disclosure,
particularly in light of his age, (5) whether the suit is challenging
the actions of the government or that of private parties, (6)
whether the defendant is prejudiced by allowing the plaintiff to
press his claims anonymously, whether the nature of that
prejudice (if any) differs at any particular stage of the litigation,
and whether any prejudice can be mitigated by the district court,
(7) whether the plaintiff's identity has thus far been kept
confidential, (8) whether the public's interest in the litigation is
furthered by requiring the plaintiff to disclose his identity, (9)
whether, because of the purely legal nature of the issues presented
or otherwise, there is an atypically weak public interest in
knowing the litigants' identities, and (10) whether there are any
alternative mechanisms for protecting the confidentiality of the
plaintiff.

*Id.* at 189-90 (citations omitted).  The court is not required "to list each of the factors or

use any particular formulation as long as it is clear that the court balanced the interests

at stake in reaching its conclusion." *Id.* at 189, 191 n.4. "[P]seudonyms are the

exception and not the rule, and in order to receive the protections of anonymity, a party

must make a case rebutting that presumption." *U.S. v. Pilcher*, 950 F.3d 39, 45 (2d Cir.

2020).

In my October 12, 2022 decision and order, I pointed out the Rule 8 deficiencies

in plaintiff's amended complaint, particularly that the pleading is shrouded in vague

language and has been filed in partially redacted form, based on plaintiff's contention

that plaintiff must protect private and confidential material facts.  (See AC generally).

Plaintiff has denoted those material facts which must allegedly be protected throughout the amended complaint with the symbols "‡‡" and "*****." (AC at 1).  These symbols appear on almost every page of the complaint, and substantially limit the court's ability to properly assess whether plaintiff has sufficiently stated a cause of action.

In the same order, I also engaged in a lengthy analysis of the *Sealed Plaintiff* factors in determining that plaintiff has not demonstrated that this case is the exceptional one, in which plaintiff should be allowed to proceed anonymously.[6]  (Dkt. No. 15 at 14-18).  With respect to the first factor, I found that the analysis weighs in favor of plaintiff, as other courts have found matters of sexual harassment are highly sensitive, and this litigation appears to implicate similar concerns. *See A.B. v. C.D.*, No. 17-CV-5840, 2018 WL 1935999, at *2 (E.D.N.Y. Apr. 24, 2018) (in defamation suit, finding "the litigation here involves matters that are of a highly sensitive and personal nature, as the case relates - in part - to allegations of sexual harassment and misconduct"); *A.B. v. Hofstra Univ.*, No. 17-CV-5562, 2018 WL 1935986, at *2 (E.D.N.Y. Apr. 24, 2018) (same).

Nevertheless, I concluded that the majority of the remaining *Sealed Plaintiff* factors weigh against allowing plaintiff to proceed under a pseudonym.  Plaintiff has not identified any physical or mental harm that would result in his or her identification in this lawsuit, nor has plaintiff identified any nonspeculative additional harms beyond that already alleged to have been suffered.  *See Doe #1 v. Syracuse University*, No. 5:18-CV-496 (FJS/DEP), 2018 WL 7079489, at *6 (N.D.N.Y. Sept. 10, 2018) (citing

---

[6]Although plaintiff did not file a formal motion, the court interpreted plaintiff's amended complaint as a request to proceed under a pseudonym. (Dkt. No. 15).

*Doe I v. Individuals*, 561 F. Supp. 2d 249, 257 (D. Conn. 2008)) ("Many courts are reluctant to allow a party to maintain anonymity merely to protect the person's economic or professional life."), *report and recommendation adopted*, 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020).

Furthermore, because plaintiff is an adult, the fourth factor weighs against proceeding anonymously. *See Doe #1*, 2018 WL 7079489, at *6 ("The fourth relevant factor, which examines whether [P]laintiff[ is] vulnerable to the potential harms of disclosure, generally relates to [his] age[ ].") (citing *Sealed Plaintiff*, 537 F.3d at 190; *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. Dec. 11, 2006) ("[C]ourts have been readier to protect the privacy of infant plaintiffs than of adults, whether because the children are conceived as more vulnerable or because the child whose privacy is at stake has not chosen for himself or herself to pursue the litigation.")).  This is also true for the fifth factor, in light of the fact that plaintiff's claim is challenging the actions of a private party.  *See Del Rio*, 241 F.R.D. at 159 (The courts recognize "there is a significant interest in open judicial proceedings even in ordinary civil litigation [because they] do not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms.").

With respect to the sixth factor, the court must consider whether permitting a plaintiff to proceed anonymously would frustrate a defendant's ability to participate in the case, whether it would cause reputational injury to the defendant, and whether it would undermine principles of fundamental fairness. *See Doe v. Townes*, No. 19-CV-8034, 2020 WL 2395159, at *5 (S.D.N.Y. May 12, 2020).  Because the named

defendant has not had an opportunity to oppose plaintiff's anonymity, the court cannot conclude that RPI would be prejudiced at this juncture.  However, factor seven seems to cut against proceeding anonymously, to the extent that "a defamation action by its very definition involves disclosure to a third party."  *Roe v. Does 1-11*, No. 20-CV-3788, 2020 WL 6152174, at *4 (E.D.N.Y. Oct. 14, 2020).  Indeed, plaintiff alleges that third parties other than defendant were informed of defendant's "false copyright allegations" as early as 2011.  (AC at 29).[7]

The eighth and ninth factors direct courts to balance whether the public's interest in the litigation is furthered by disclosure of the plaintiff's identity. *See Sealed Plaintiff*, 537 F.3d at 190. "Where the litigation involves, not abstract challenges to public policies, but rather . . . particular action and incidents, open proceedings nevertheless benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication." *North Jersey Media Grp Inc. v. Doe, Nos. 1-5*, No. 12-CV-6152, 2012 WL 5899331, at *8 (S.D.N.Y. Nov. 26, 2012) (internal quotations omitted).  Here, the allegations do not involve abstract questions of law, but specific factual allegations of harassment and other mistreatment by defendant. These issues "further the public's interest in enforcing legal and social norms." *Doe v. Skyline Automobiles Inc.,* 375 F. Supp. 3d 401, 408 (S.D.N.Y. 2019) (citing *North Jersey*, 2012 WL 5899331, at *8).  Thus, the eighth and ninth factors weigh against proceeding

---

[7]In his original complaint, filed publicly on the court docket, one of plaintiff's exhibits provides sufficient information regarding the published article which RPI allegedly required him to retract that identifying plaintiff by name is easily accomplished through an obvious internet search.  This casts doubt on whether plaintiff's identity has "thus far been kept confidential"–the seventh factor to be considered in deciding whether to allow a litigant to proceed under a pseudonym.

anonymously.

The tenth and last factor is whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.  *Sealed Plaintiff*, 537 F.3d at 190. If a viable alternative to complete anonymity exists, this factor weighs against a finding for anonymity. *See Doe v. United States*, No. 16-CV-7256, 2017 WL 2389701, at *2 (S.D.N.Y. June 1, 2017) (determining that it would be inappropriate for the plaintiff to proceed under a pseudonym where alternative measures could be taken to protect his privacy interest). Here, sealing and redacting certain documents, where appropriate, are sufficient alternatives to anonymity and, in fact, routinely done in cases involving sensitive matters. *Anonymous v. Medco Health Sols., Inc.*, 588 F. App'x 34, 35 (2d Cir. 2014) (rejecting the assertion that a plaintiff's medical condition and its economic effect on career prospects justified the plaintiff's request to proceed under a pseudonym); *see Skyline Auto.*, 375 F. Supp. 3d at 408 (citing *Doe v. United States*, 2017 WL 2389701, at *2) ("There are multiple other ways a plaintiff's interest can be protected, including the redaction of documents and sealing. Further Plaintiff could seek a protective order, or the parties could enter a confidentiality agreement.").  The abundance of alternative, less extreme, mechanisms to guard plaintiff's sensitive information weighs strongly against plaintiff's request to proceed under a pseudonym.

Based on the aforementioned analysis, I denied plaintiff's request to proceed anonymously in this case, and directed the plaintiff to reveal his or her identity and substitute his or her name for that of J. Roe in any amended pleading going forward. (Dkt. No. 15 at 18-19).  Because plaintiff has failed to file an amended pleading at all in

this action, much less one in which the above noted Rule 8 and 10(a) deficiencies have been corrected, the court further recommends dismissal of the amended complaint.

## V.   **Opportunity to Amend**

### A.   **Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

### B.   **Application**

This court has already afforded plaintiff the opportunity to amend, which plaintiff has squandered.  Thus, the court will recommend dismissing plaintiff's amended complaint without the further opportunity to amend.

## VI.   **Motion to Disqualify**

Instead of filing a complete IFP application and/or a second amended complaint pursuant to the court's instructions, plaintiff filed a "motion to disqualify the referral judge" on December 14, 2022.  (Dkt. No. 18).  In addition to seeking my disqualification from this action, the motion also seeks reconsideration of plaintiff's (1) ability to proceed under a pseudonym, (2) IFP status, (3) motion to seal records, and (4) motion for an extension of time - at least 18 months - to submit an amended pleading, "such that RPI may at least appear in this Court and release the case materials."  For the reasons stated in my October 12, 2022 decision and order (Dkt. No. 15), my November 7, 2022 text order (Dkt. No. 17), and this order and report-recommendation, plaintiff's

motion for reconsideration is denied.

To the extent plaintiff seeks my disqualification, that request is also denied for the following reasons. At the outset, plaintiff's reliance on 28 U.S.C. § 636(c)(1) as a basis to "decline[ ]. . . hav[ing] a United States Magistrate Judge conduct any further proceedings in this severely complex case" is flawed. § 636(c)(1) states, in relevant part,

> Upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct *any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case*, when specially designated to exercise such jurisdiction by the district court or courts he serves.

28 U.S.C. § 636(c)(1) (emphasis added). Here, however, the district court referred this matter to me for general pretrial proceedings pursuant to § 636(b), which authorizes a Magistrate Judge to "conduct hearings, including evidentiary hearings, and to submit to the district court proposed findings of fact and recommendations for the disposition," with certain exceptions not relevant to this matter. Unlike referral under § 636(c)(1), a referral to a Magistrate Judge for general pretrial proceedings does not require consent of the parties. *See Wright v. New York State Dep't of Corr. Servs.,* 372 F. App'x 175, 176 (2d Cir. 2010). Accordingly, plaintiff has no basis to reject or decline a magistrate judge's jurisdiction over the pretrial proceedings held in this action.

Plaintiff also seeks my disqualification from this action pursuant to 28 U.S.C. § 455(a), which states: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be

20

questioned."  "The purpose of § 455(a) 'is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible.' " *Green v. N.Y.C. Health & Hosps. Corp*., 343 Fed. App'x 712, 713 (2d Cir. 2009) (quoting *Liljeberg* \*149 *v. Health Servs. Acquisition Corp*., 486 U.S. 847, 865 (1988)).

It is well settled that a judge maintains discretion in the first instance in determining whether to disqualify him or herself, because "[t]he judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion." *In re Drexel Burnham Lambert Inc*., 861 F.2d 1307, 1312 (2d Cir. 1988); *see also New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, No. 1:04-CV-0962(DNH/RFT), 2007 WL 655607, at \*3 (N.D.N.Y. Feb. 23, 2007) (" 'To be clear, a judge should not refer a recusal motion to another judge but rather should exercise its 'affirmative duty to inquire into the legal sufficiency' of said motion and determine if there is a factual basis to support the charge of a 'bent of mind that may prevent or impede impartiality of judgment.' ").  "[A] judge has an affirmative duty . . . not to disqualify himself unnecessarily,"  *Nat'l Auto Brokers Corp. v. Gen. Motors Corp*., 572 F.2d 953, 958 (2d Cir. 1978); in fact "[a] judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert Inc*., 861 F.2d at 1312.  "Litigants are entitled to an unbiased judge; not to a judge of their choosing."  *Id.*

Here plaintiff argues, essentially, that recusal is warranted because I (1) have "never judged or issued any *Decision and Order* regarding any case similar" to the instant action, (2) "served as a federal prosecutor in the U.S. Attorney's Office" prior to

21

becoming a magistrate judge, and (3) have "*too many assigned cases under consideration* at this time. (Dkt. No. 18 at 5-6) (emphasis in original). Plaintiff also expresses his disagreement with the decisions I have previously issued with respect to this action. None of these bases, however, call into question the court's impartiality, such that recusal would be warranted under § 455. In particular, the U.S. Attorney's Office is in no way involved in this case, such that a bias or prejudice could even conceivably be inferred. Otherwise, § 455 does not suggest that a court's caseload or purported lack of expertise in a specific type of lawsuit is a sufficient basis for recusal. Nor is a litigant's disagreement with a judge's rulings. *See Lazofsky v. Sommerset Bus Co.*, 389 F. Supp. 1041, 1043 (E.D.N.Y. 1975) (recognizing the Supreme Court's ruling "that the bias or prejudice which can be urged against a judge must be based upon something other than rulings in the case.") (quoting *Berger v. United States*, 255 U.S. 22, 31, 34 (1921) (*quoting Ex parte American Steel Barrel Co.*, 230 U.S. at 35)); *see also In re Cooke,* 160 B.R. 701, 708 (Bankr. D. Conn. 1993) ("Adverse rulings and legal disagreements . . . are not sufficient to require the presiding judge's disqualification.") (citing *In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1314). Accordingly, plaintiff's motion for disqualification must be denied.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's application for IFP status (Dkt. No. 3) be **DENIED**, and it is

**RECOMMENDED**, that this action be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and it is

**ORDERED,** that plaintiff's motion to disqualify the referral judge be **DENIED** in all respects, and it is

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation upon plaintiff in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 8, 2023

Andrew T. Baxter
U.S. Magistrate Judge